## King v. King, et al.

(Decided December 20, 1918.)

### Appeal from Logan Circuit Court.

1. Partition—Division of Land.—Where lands are susceptible of division without material impairment of their value, a divison thereof will be had, if desired by the owners, rather than a division of the proceeds after a sale for that purpose.

2. Partition—Division Among Joint Owners—Liens.—Lands sought to be divided between several joint owners may first be subjected to the payment of a lien debt, and the judgment may direct that sufficient land be laid off and sold to satisfy the lien debt, and the residue divided.

3. Partition—Joint Owners—Rents.—Under the facts of this case a joint owner of land is not entitled to recover rents of a widow in possession to whom dower has not been assigned, it appearing that the widow used and cultivated no more of the land than she was reasonably entitled to hold as dower.

4. Partition—Division of Land—Liens.—A lien note, representing purchase money, upon lands of a decedent sought to be divided should be properly proven when presented; but if this is not done the proper procedure is to raise the question in the trial court by motion for a rule to require verification. The question can not be raised by demurrer and is waived by pleading to the merits.

J. VERSER CONNER and I. G. MASON for appellant.

S. R. CREWDSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

D. M. King died intestate and childless in October, 1915, while a resident of Logan county, Kentucky, leaving considerable personal property and a farm of 166 acres situated near Adairville. He was past forty years of age, and left surviving him a widow, the defendant, Mrs. Kate King. The plaintiff, Victoria J. King, is his mother, and defendant, J. M. King, is his father. After his death J. M. King was appointed administrator of his estate and qualified and entered upon the discharge of the duties of the trust. In September, 1916, this action was instituted by V. J. King against J. M. King, administrator, J. M. King and Katie King, widow of the deceased, for a sale of the aforesaid farm owned by D. M. King at his death, and a division of the proceeds. By the petition it is alleged in substance that the father and mother are the only heirs of D. M. King; that he died intestate; that his wife, Katie King, is entitled to dower in the lands; that said lands are not susceptible of division without material impairment of the value of the whole and of each part thereof; that there are no other liens upon the lands and that all the debts of the estate have been paid from the personal property thereof; that defendants, Katie King and J. M. King, have had the use and rental of the farm for the year 1916, and that the reasonable rental of the farm for that year was $700.00, and the plaintiff V. J. King is entitled to one-half thereof—$350.00. J. M. King and Katie King filed separate answers by which the indivisibility of the lands, described in the petition, is denied, and it is affirmatively averred that the lands are susceptible of

advantageous division. The answer of J. M. King also asserted a lien for purchase money, amounting to about $1,300.00, upon the lands and averred that said tract is subject, first, to this lien debt and then that Katie King is entitled to dower in one-third of the remainder, and that the residue should be divided equally between the plaintiff, V. J. King, and the defendant, J. M. King. He denied having•used the lands or received rental therefrom for the year 1916, or at any time, and averred that the defendant, Katie King, had held and used a part of the lands only, as she had a right to do as widow, no dower having been assigned, and that the plaintiff, V. J. King, was privileged to have used and occupied a part of said farm had she desired to do so, but that she failed and refused to cultivate or use any part of said lands, and for that reason was not entitled to recover rents either of J. M. King or the widow, Katie King. Issue was joined upon the several questions presented.

The appellant, Mrs. V. J. King, did not give her deposition, and the deposition of J. M. King was, upon motion of the plaintiff, stricken. The plaintiff, however, offered the depositions of nine witnesses in support of her contention that the lands were not susceptible of advantageous division. Upon this point the defendants offered five witnesses. Mr. Barnard Johnson, who was called for the plaintiff, stated he lived on an adjoining farm to the lands in question, and when asked whether the D. M. King farm was susceptible of division he answered "Well, it just depends upon circumstances, but my opinion is that you might make arrangements to sell part of it and get something for it and you might not." He continued: "Well, it would be a little unhandy for an outlet; that is the biggest trouble I can see about it, you could not get an outlet." Further along in his deposition he said, "No, sir, I can not say it could not be done, because I do not know very much about the place, as I said before, except about the line coming out the road, never been on the place only just on that part of it from the road up to the house."

Mr. E. A. Keller was next called by plaintiff and stated that he lived on the farm of Mrs. King in 1916, and cultivated a part of it. After telling about the crops which were raised on the farm in that year and the value thereof, he was asked if the farm could be divided into

three parts without materially impairing its value, and he answered, "No, sir, I do not believe it could." He then stated in answer to questions the locations of the several houses and barns and timber plots.

Then came R. E. Crocker, a farmer, who stated that he lived next to the D. M. King farm and had known it for some thirty years, or more. Answering the question whether it was susceptible of advantageous division, he said, "That is a little hard question to answer; I tell you the truth about it though, I just do not think it could, not very conveniently. Now I can give you my reason why I think so: If it was cut up into pieces that way—it is a little out of the way place to start with— and if you was to cut it up, there would be no competition if you wanted to sell it, it just joins one man on each side there; it don't seem to me to be the proper thing to do."

Mr. E. N. Taylor, a farmer, when asked if the lands could be divided into three equal parts without depreciating the value, said, "No, sir, I do not think it could."

The foregoing is the strongest evidence given for the plaintiff in support of her averment that the land was not susceptible of division. On the other hand, four persons were called by the defendants who had recently gone upon the lands for the purpose of studying the situation and making a tentative division thereof, in three parts after laying off enough to satisfy the lien debt of $1,300.00. These persons fixed the value of the land at about $45.00 per acre. They estimated that it would take about thirty acres of the tract to satisfy the $1,300.00 lien debt, and that would leave 136 acres to be divided into three parts. They then laid off 36 acres as dower, to the widow around the mansion house, including two barns, garden, orchard, etc., which was satisfactory to her. When these two pieces are lopped off there is left approximately 100 acres to be divided between the plaintiff, V. J. King, and her husband, defendant, J. M. King. The widow, Katie King, stated that she had lived upon the farm for a number of years, had no other home, and desired to retain her dower interest in the lands and to continue to reside thereon. J. M. King also desired to have his share in kind. The four witnesses who examined the lands, one of them being a surveyor, gave it as their opinion that the land was easily susceptible of division without impairment to its

value. They also stated that some years before a road had passed through this farm and that the road bed is still intact; and is used for the benefit of the farm as now constituted. The tentative division, which they suggested, would give each tract an outlet by this old road and make the whole easily accessible to the pike which is a short distance away. A map showing the situation and general outline of the tract is made a part of the record.

The trial court in its judgment directed a division of the lands, in kind, after a sufficiency thereof had been sold to satisfy the lien debt of J. M. King. It denied plaintiffs claim for rents and adjudged the cost largely against her.

It is a well established rule that where lands are susceptible of division, without material impairment of their value, a division thereof will be had, if desired by the owners, rather than a division of the proceeds after a sale for that purpose. The rule is stated in Kirk v. Crutcher's Admr., 145 Ky. 52, thus: "The law favors a division of land rather than a sale for division, and a sale will not be ordered unless substantial injustice will be done by a partition." To the same effect is Prewitt's Committee v. Hurt, 178 Ky. 528. It is urged, however, that the land is not on the main highway, is isolated, and that its shape and general nature is such as to render it impossible to make a division into three parts, after satisfying the lien debt, without materially impairing its use as well as its salable value. It is urged in support of this that the farms adjoining this tract are large and devoted to tobacco and wheat raising, and that there are no tracts with as few as 100 acres, in that vicinity. We have carefully examined the map and evidence relating to the shape, nature and character of the lands in question, and are firmly of the opinion that the lands are susceptible of the division proposed without materially affecting their usefulness or value. The old road which runs through the farm is an easy outlet for each proposed tract, and has been employed in the enjoyment of the farm as a whole and may be so employed by the several owners when divided. While most of the evidence introduced by both sides presents chiefly the opinion of the witnesses, yet there is sufficient testimony, aside from the map introduced, to have fully warranted the trial court in arriving at the conclusion that the lands are susceptible of advantageous division.

It is next urged that the judgment of partition is premature in that the lien debt must first be satisfied and this would take an unascertained part, leaving at present an unknown number of acres for division. This position is not well taken. The commissioners appointed to divide the lands and who made the tentative report of division, so arranged the division as that the part sold may be increased or diminished without changing the general outline of the remainder. According to all the evidence on both sides the tract is worth from $45.00 to $50.00 per acre. All the neighboring land owners give evidence to this effect. Those most interested assert that 30 acres laid off, as proposed, will be adequate to raise a sum sufficient to satisfy the entire lien debt. When laid off, as suggested, the loss of the 30 acres will not so impair the residue as to render a division impracticable. The judgment directs the master commissioner to sell only enough of the tract to satisfy the lien debt, and when this sale is made, definitely fix the boundary of the tract sold so that the balance can be certainly known and boundaries fixed. There is no good reason why the judgment should not have directed a division of the residue after the sale of this portion for the satisfaction of the lien claim. This court in the case of Maynard v. Maynard, 178 Ky. 332, approved a judgment partitioning lands after a sale of a portion to satisfy a lien debt, in substance the same as the one complained of here. Certainly appellant, Mrs. V. J. King, will not be prejudiced by such division.

Appellant insists that she was entitled to recover rents for the use of the farm for the year 1916. D. M. King died in October, 1915. He and his wife were residing upon the farm in question at the time of his death, and some of the wheat lands had been prepared, if not sown, for the following year. The widow continued to reside in the mansion house on the farm; she rented some of the land and caused it to be cultivated. For this the appellant claims rent. The widow was entitled to the use and occupancy of the mansion house, barn and lot, garden and orchard, if there was one, free from rent until assigned dower. No dower had been assigned up to the commencement of this action. J. M. King does not reside upon the farm but owns a large one nearby. He did not occupy or use any part of the farm in question.

The widow, Mrs. Katie King, used less than one-half of the farm according to the evidence. She was entitled to use at least one-third of the farm in addition to the house, garden, barn and lot, etc. J. M. King was entitled to one-third of the farm, excluding the house, garden, etc., which the widow occupied, but he is not claiming rent from the widow, and insists that she is entitled to the use of the place without paying rent. If appellant, Mrs. V. J. King, was entitled to rent at all it was upon one-third of the farm exclusive of the widow's right to use the house and premises. According to the evidence J. M. King approached V. J. King in the early part of 1916 and inquired of her what she wanted to do with her part of the D. M. King farm that year, and she declined to give him an answer or to tell him what she wanted to do. Her son advised her that she should indicate what her purpose was, but she refused. From the evidence it further appears that about one-half of the farm was not used at all that year, and both Mrs. Katie King and J. M. King assert that they were willing for appellant to have the use of some part of the farm and did not interfere with her using or occupying the same. Considered in the light of this evidence, we do not think the trial court erred in refusing to allow appellant, V. J. King, to recover rents for the year 1916.

Complaint is made that one of the commissioners appointed to divide the land, was not qualified because of partiality, but we find no sufficient ground upon which to rest this complaint. From the evidence it appears that the commissioner complained of is a man of good standing in his county, wide experience, and of special fitness for the work contemplated. He is a surveyor who has helped to divide a great number of tracts of land, and who has been repeatedly elected to the office of county surveyor of Harrison county.

It is also insisted by appellant that the lien note presented by the answer of the defendant, J. M. King, is not sufficiently proven under section 3870-74 Kentucky Statutes. In view of the fact that the pleadings and all the evidence in the record sustains the justness of the claim, and the further fact that appellant in her brief admits that the note is a just charge against the lands, this court would not be justified in reversing the judgment of the lower court upon this ground. Moreover,

this court has in more than one instance sustained such claims upon substantially the same kind of proof as here presented. No objection was made in the lower court to the claim based on the note, because of insufficient verification. Reply was filed and issue joined upon the claim without objection. Repeatedly this court has held that this question is waived by pleading to the claim. In Maynard v. Maynard, *supra,* it is said:

"The proper procedure in raising this question in the trial court is a motion for a rule to require verification of the claim. Thomas v. Thomas, 15 B. M. 178. It can not be done by filing a demurrer to the pleadings, as counsel argue the question was raised by them in the trial court. By filing the demurrer to the pleading, setting up the claim, plaintiff waived demand and proof, Lytle v. Davidson, 23 Rep. 2262, as does a plea to the merits of the claim. Hudson v. Combs, 110 Ky. 762; Gray v. Graziani, 165 Ky. 771."

Appellant asserts that there was sufficient personal property and money in the hands of the administrator, J. M. King, to have fully paid off and satisfied the lien note in question, and that it was his duty first to exhaust the personal property before asserting his lien upon the real property. Appellees denied that there was sufficient funds in the hands of the personal representative to discharge in whole or a part the lien debt. This is not an action for a settlement of the estate of D. M. King, but is a suit for a sale of lands for a division of the proceeds. The lien note is presented by the answer of the defendant, J. M. King. It is admitted to be a lien upon the lands sought to be divided. Its holder had the right to assert his claim and to enforce his lien against the lands in this action.. Especially is this true where no settlement of the estate is prayed, or effort made to show that an administrator has in his hands sufficient funds with which to satisfy the encumbrance.

The trial court adjudged the cost of the assignment of dower against appellant, and this we think was error. There was no controverted question of fact with reference to the assignment of dower. The petition admitted that the widow, Katie King, was entitled to dower. The answers assert the same. The cost in this respect should have been paid by all of the parties interested, according to the rule. Judgment is affirmed with direction to correct the taxation of costs as above indicated.