## Taylor v. Farmers & Gardeners Market Ass'n Inc.

June 22, 1943.

Fielden Woodward and Woodward, Dawson & Hobson and Flynn & Mohrman for appellant.

Edward G. Klemm for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

Appellant and appellee own jointly a vacant lot 63 feet in width and 142 feet in depth, situated on the south side of Liberty Street in the city of Louisville. The property lies within the block bound on the north by Liberty Street, on the east by Floyd Street, on the west by Brook Street, and on the south by Pearl Street. There is an alley running east and west through the center of the block and the lot in question extends 142 feet south from the south side of Liberty Street to the alley.

Appellant, who was the plaintiff below, filed this action in February, 1941, alleging that she owned a one-

third undivided interest in the lot and appellee, a corporation, owned the other two-thirds undivided interest, and alleged further that from September 10, 1938, until the date of the filing of the petition, the appellee had the exclusive use of the lot as a parking and loading space in connection with its business and for its exclusive benefit and profit and that the reasonable rental value of the property was $50 per month and that she (appellant) had received no rental or other income from the property since September 10, 1938. By an amended and substituted petition the allegations as to the rental value of the property was corrected and it was alleged that $150 per month was a reasonable rental value for the lot and that she was entitled to recover of appellee one-third of the rental value, or the sum of $1,500, for which sum she prayed judgment against appellee, and further asked for a decree ordering the lot sold at public sale and that one-third of the proceeds of the sale be paid to her.

The defendant (appellee) filed its general demurrer to the petition and without waiving the same filed its answer, counterclaim and cross-petition in which it admitted the joint ownership of the property as alleged in the petition, but denied all the allegations concerning the use of the lot and the rental value of the same or that appellant should recover of it any sum for rents. It further pleaded for counterclaim against appellant that it had paid the taxes on the lot for the year 1940 amounting to the total sum of $109.53, and asked to recover of appellant one-third of that amount or the sum of $36.51, which was admitted by appellant and that item is not involved in this appeal. For further counterclaim and cross-petition appellee alleged that the lot is divisible into two lots, one having a width of 21 feet representing the one-third interest owned in the whole lot by the appellant, and a lot having a width of 42 feet representing the two-thirds interest owned by appellee. It further alleged that it was the owner of the lot lying immediately along the easterly line of the lot in question and that it is entitled to have its two-thirds interest in the lot owned jointly by it and appellant laid off and allotted to it adjoining the lot it now owns, and that the lot could be divided as indicated without detriment or injury to the plaintiff and asked that commissioners be appointed to divide the lot between the parties as indicated. Later appellant filed an amended and additional petition in which she alleged that the lot is indivisible and cannot

be divided without materially affecting and decreasing the value of it and that a majority of the property in that block adjoining the lot in question is owned by appellee and that all of said real estate is located in the marketing section of the city of Louisville in what is known as the "Haymarket," and that the real estate at that location is valuable for use as a parking, loading and unloading space for trucks and customers in the marketing business, and that its value is due to the fact that the entirety of the real estate is suitable for that use and that a partition or division of the property will materially affect and decrease the value of the same for such use.

By subsequent pleadings issue joined on the question of rents and the divisibility or indivisibility of the lot. On April 25, 1941, appellee filed its motion for the appointment of commissioners to partition the lot between the owners thereof and also filed its demurrer to so much of the petition as sought a recovery of rents. On June 12 the court sustained the demurrer to the petition insofar as it sought a recovery of rents and also sustained appellee's motion for the appointment of commissioners to make a division of the property and appointed three commissioners and directed them to examine the property and determine whether or not it could be divided between the parties without impairing its value or the value of the respective interests of the parties and that if the commissioners determined that the lot can be divided between the parties according to their respective interests that the commissioners shall then proceed to make the partition accordingly, and further ordered that in making the partition or division the commissioners shall allot to appellee its share or interest in the property on the east side thereof which adjoins the property then owned by appellee. Appellant objected to the appointment of the commissioners or a division of the property, which objection the court overruled with exceptions.

The commissioners filed their report stating that they found that the property could be divided between the joint owners without impairing its value or the value of the respective interests of the parties, and allotted to appellee approximately 42 feet frontage adjoining the property it then owned, and allotted to appellant approximately 21 feet frontage representing her one-third interest therein.

On June 20, 1941, appellant filed exceptions to the report of the commissioners objecting and excepting to the report with respect to their finding that a division of the lot would not impair the interests of the respective parties, and particularly the interest of appellant, insisting that a lot 21 feet in width on the west side as allotted to her would not be a just or equitable distribution to her and would be too small for commercial use and its marketability would be impaired; that one-third of the whole lot would not be equal in value to one-third of the entire lot and in fact would not be equal to one-sixth of the value of the entire lot; that the division as made by the commissioners is not fair and equitable and is without regard to the rights of the parties and particularly of the appellant. On June 27, 1941, appellee moved the court to confirm the commissioners' report and submit the case for judgment, to which appellant objected and the case was ordered passed to November 13, 1941, for a hearing, and on November 13 by agreement of parties the case was passed to December 4, 1941, on which latter date appellant moved the court for an order of reference to the master commissioner in order for the commissioner to hear evidence and determine whether or not the lot was divisible, which motion the court overruled with exceptions and on the same day the court entered judgment overruling appellant's exceptions to the report of the commissioners and entered judgment confirming the report and dismissed appellant's petition and amended and substituted petition and ordered the master commissioner to execute and deliver deeds to the parties to their respective shares of the lot as partitioned and allotted to them by the commissioners, to all of which appellant objected and excepted and was granted an appeal.

There are two questions involved in this appeal; namely, whether evidence should have been taken on the issue on the divisibility or indivisibility of the lot; and, whether the chancellor erred in sustaining the demurrer to appellant's petition insofar as she sought to recover rents of appellee for the use of the property.

It seems to be a well settled rule of law in this state that the court will presume that a town lot is not susceptible of advantageous division. In the case of Fannin v. Fannin, 256 Ky. 273, 75 S. W. (2d) 1042, 1043, the court said in part:

"It is the rule in this state that the law favors. a division of land in kind rather than a sale and a division of the proceeds (King v. King, 182 Ky. 665, 207 S. W. 1; Kirk v. Crutcher's Adm'r, 145 Ky. 52, 139 S. W. 1076; Prewitt v. Hurt, 178 Ky. 528, 199 S. W. 33; Dunbar et al. v. Gabbert et al., 194 Ky. 335, 238 S. W. 1050), and this rule particularly obtains where the property sought to be divided or sold is farm land or other parcels of. real estate reasonably susceptible of division. But a different rule obtains respecting town lots. In a long line of decisions this court has consistently held that the court will presume, without necessity of proof, that a town lot is not susceptible of advantageous division. Patterson v. Gray, 3 Ky. Law Rep. 251; Burns v. Ingersoll, 6 Ky. Law Rep. 737, 13 Ky. Op. 398; Faught v. Henry, 13 Bush 471; Bell v. Smith, 71 S. W. 433, 24 Ky. Law Rep. 1328. However, this presumption may by proof be overcome.

"The appellant alleged in her petition, and it is conceded, that the property sought to be divided consists of a town lot. Therefore, the burden was on appellant to overcome this presumption by reasonably clear and convincing proof. Thus, it will be seen that the determinative question in this case is whether or not she has sustained this burden."

See, to the same effect, Barbee v. Price et al., 263 Ky. 8, 91 S. W. (2d) 561; Faught v. Henry, 13 Bush 471, 76 Ky. 471. In the case at bar, appellee, in its cross-petition asserted that the lot in question was divisible which was denied by appellant, thus putting in issue the question of divisibility of the lot. We have seen from the authorities supra that the burden was on appellee to show that the lot was susceptible of division without impairing its value, particularly the interest of appellant. The chancellor should have required appellee to have established by evidence that the lot was susceptible of division but, as we have seen, the chancellor did not only fail to require appellee to sustain the burden which was rightfully upon it, but even denied appellant the right to hear evidence on the issue to support a presumption already in her favor. It is to be noticed that the order appointing the commissioners to divide the lot directed them to ascertain whether or not it was divisible, and appellee insists that since the question of divisibility was and had been determined by the commissioners no

further proof was necessary. We cannot accept this argument, since that was a function of the court and not of the partitioning commissioners. Their duties are merely ministerial except that they may exercise their judgment as to a fair division of property with respect to quantity, quality and value which also is subject to review by the chancellor on exceptions being filed to their report.

Appellee insists that the authorities cited supra, relied on by appellant, are not applicable to the facts of the present case. We cannot agree to that argument. We are unable to draw any distinction between the principles of law enunciated in those cases and the law applicable to the facts in the present case. Appellee further insists that even if the principles enunciated in the cases supra are applicable to the property in question, yet such presumption has been overcome by the physical facts. A map or chart was filed with the report of the commissioners showing that the lot in question was assessed by the city assessor as three lots, Nos. 240, 242 and 244, East Liberty Street, and it is also shown that certain other lots in the same block have a width of twenty feet or less. It is not shown, however, when or under what circumstances the lot was platted as three lots or what use was being made or was to be made of the property at the time, or to what use it was then more suitably adapted. Change of conditions and the use to which the lot as a whole may now be better suited might be entirely different from that when the lot was formerly platted as three lots. Since the lot is now owned jointly by the parties and treated and considered by them as comprising a single lot, we do not think the physical facts relied on by appellee are sufficient to overcome the presumption that the lot is not susceptible of division without impairing its value, taking into consideration the present conditions and the most profitable or best use that may be made of the property. It follows from what has been said that the chancellor erred in failing to require appellee, the proponent of the division of the property, to show by satisfactory evidence that the lot could be divided between the joint owners without impairing its value or the share of either party and that a division thereof could be made which would be fair and equitable to each party.

This brings us to the question of whether or not the court properly sustained appellee's demurrer to that part of appellant's petition by which she sought to re-

cover rents of appellee for the use of the property. Appellant merely alleged that appellee was making use of the property in connection with its business, but there is no allegation that there was any ouster of appellant by appellee or any action on the part of appellee amounting to an ouster of appellant, its co-owner, nor that appellant was deprived by appellee of the right to use the property nor any claim that appellee was holding or using the property adversely to the rights of appellant, nor that appellee had received any net rents or profits from the property. We think these are essential elements to show a right of recovery for rents under the facts of this case. This same question was determined in the case of Crawford v. Wiedemann, 170 Ky. 613, 186 S. W. 509, 512, wherein the rule is thus stated:

"* * * The general rule seems to be, that if there has been an actual ouster of one cotenant by another, accompanied by a claim of adverse holding as against the ousted one, rent for use and occupation, may, under certain circumstances, be recovered by the ousted tenant from the one who ousted him, especially if the property is incapable of occupation except as an entirety, and the tenant in possession after such ouster occupies and uses all of it. But, however this may be, running throughout all the books will be found two essential elements which must exist before the tenant sought to be charged is liable. These are: (a) That the tenant sought to be charged and who is claimed to be guilty of an ouster must assert *exclusive* claim to the property in himself, thereby necessarily including a denial of *any* interest or any right or title in the supposed ousted tenant; (b) he must give notice to this effect to the ousted tenant, or his acts must be so open and notorious, positive and assertive, as to place it beyond doubt that he is claiming the *entire* interest in the property. In the notes to the case of Ward v. Ward, [40 W. Va. 611, 21 S. E. 746, 29 L. R. A. 449] 52 Am. St. Rep. 911, and upon which appellant largely relies, an ouster is defined on page 929 to be:

" 'An ouster, whether committed against a tenant in common or against an owner in severalty, is a wrongful dispossession or exclusion of a party from real property who is entitled to be in possession thereof, and must necessarily be accompanied

with an intent to effect such exclusion. Freeman on Cotenancy and Partition, § 228.'

"It is furthermore to be noted that the principle laid down in that case was criticised by the learned author of the notes on page 930, of 52 Am. St. Rep. as follows:

" 'We think the ruling in the principal case due to the fact that the compelling a co-owner to account when he has neither received rents nor profits from a third person, nor been guilty of any ouster or exclusion of his co-owner, involves manifest injustice, and is contrary to the weight of the authorities.' "

Other authorities of a like nature might be cited but we think the case supra, and authorities cited therein, are conclusive of the question and that the court did not err in sustaining the demurrer to that part of the petition.

Appellant cites and relies upon the cases of Pistole et al. v. Lanier, 214 Ky. 290, 283 S. W. 88, and Mastin v. Mastin's Adm'r et al., 243 Ky. 830, 50 S. W. (2d) 77, and other authorities of a like or similar nature as support of her contention that she is entitled to recover rents. But we think those cases are distinguishable from the facts in the present case, in that the occupying tenants were held liable for rents to nonoccupying co-owners where net rents and profits were received from the use of the property by the occupying tenants, and other circumstances and conditions not present in the case at bar.

Wherefore, the judgment is affirmed insofar as it dismissed the petition seeking to recover rents of appellant with leave to appellant to amend, if she so desires, and reversed on the other phase of the case because of the error of the court in failing to hear proof on the issue as to the divisibility of the lot. The parties will pay one-half each of the cost of the action.