I. H. BUCHANAN, Appellant,

v.

Raleigh WATSON and Stella Watson, Appellees.

Court of Appeals of Kentucky.

May 4, 1956.

Earl R. Cooper, Salyersville, J. Woodford Howard, Howard & Francis, Prestonsburg, for appellant.

Marcus Mann, Salyersville, J. Blaine Nickell, West Liberty, for appellees.

C. D. Carpenter, Hazard, Dailey & Fowler, Frankfort, Bruce Stephens, Jr., Hazard, amici curiæ.

MONTGOMERY, Judge.

In this declaratory judgment action, two questions are presented: May the owner of minerals underlying a tract of land remove coal therefrom by a strip mining process which results in the destruction of the surface owned by another? If so, is the owner of the coal liable for damages to the surface owner for such surface rights as may be destroyed? The Chancellor decided both questions in the affirmative. He held that the coal could be strip mined but damages must be paid for the destruction of the surface owner's interest in the surface and the timber thereon. Both parties appeal.

The meaning and effect of a mineral deed dated May 19, 1903, from Miles Cole and wife to John C. C. Mayo, covering 129.47 acres of land in Magoffin County, are involved. Appellant has the exclusive right to mine the coal under this land by virtue of a lease from Elkhorn Coal Corporation, successor in title to Mayo. Appellees purchased 20 acres of the surface of this boundary by deed dated June 19, 1943, for a recited consideration of $75. About 1.5 acres of coal lie around the top of a mountain and within the 20-acre tract.

The Cole deed, severing the minerals, granted and conveyed " * * * property, rights and privileges, in, of, to, on, under, concerning and appurtenant * * * All the coal, minerals and mineral products, * * * such of the standing timber as may be, or by the Grantee, his heirs or representatives, its successors, or assigns, be deemed necessary for mining purposes, * * * use

and operate the same and surface thereof, * * * in any and every·manner that may be deemed necessary or convenient for mining, and therefrom removing, * * * and in the use of said land and surface thereof by the Grantee, his heirs or representatives, successors and assigns, shall be free from, and is, and are, hereby released from liability or claim of damage to the said Grantor, their representatives, heirs and assigns, * * * there is reserved to the Grantor all the timber upon the said land, except that necessary for mining, and·the purposes hereinbefore mentioned, and the free use of land for agricultural purposes, so far as such use is consistent with the property, rights and privileges hereby bargained, sold, granted or conveyed, and the right to mine and use coal for Grantor's own personal household and domestic purposes."

Thus, the deed created two separate and distinct estates in the land under which, insofar as the 20 acres are concerned, appellant and appellees now claim.

The Chancellor found that the only feasible and economical way to mine the coal in question was by the strip and auger method of mining. He further found that such operation would result in the destruction of the timber and the surface above and adjacent to the coal.

Appellant contends that since all of the coal was conveyed it may be mined by any method and the appellees' surface rights are subordinate to the rights of appellant. Appellees contend that it was not contemplated that a mining process would be used which would destroy the surface and timber of a substantial area and the surface rights may not be violated in such manner.

This question has been considered in other states with conflicting conclusions. Opposing views appear in the majority and dissenting opinions in the case of Commonwealth v. Fitzmartin, 376 Pa. 390, 102 A.2d 893. Considering a deed similar to the one before us, the majority of the members of the Supreme Court of Pennsylvania decided that the owner of the minerals could strip mine coal even though it destroyed the rights of the surface owner. The controlling considerations seem to have been that all of the coal in and under the surface had been conveyed, and the grantor·had released the grantee of any liability for damages to the land. The opinion of the majority was that the method by which the coal was removed was incidental to the right to remove it.

The view expressed in the dissent was that the words of the deed limited the scope of the mining rights, and since they show the parties contemplated deep mining by customary underground operations, surface mining was not authorized. Similar conclusions were reached in West Virginia-Pittsburgh Coal Co. v. Strong, W.Va.1947, 42 S.E.2d 46, and in Franklin v. Callicoat, Ohio Com.Pl.1954, 119 N.E. 2d 688.

In the foregoing cases, an attempt was made to determine what the parties intended with respect to the method·of removal of the coal. In the present case, the Chancellor found from a reading of the deed that the parties thereto had not contemplated the strip and auger method of mining nor did they contemplate that any portion of the surface of the land would be destroyed or rendered valueless for agricultural purposes or growing timber. The deed by express language did not exclude or include this method of mining, although the proof shows that such mining methods were known and had been used prior to the date of the deed. It seems clear that the parties intended the conveyance of the coal. To deny the right to remove it by the only feasible process is to defeat the principal purpose of the deed.

We think the Chancellor correctly decided that since the appellant had the right to remove all of the coal in, on, and under the surface of this tract, the particular method contemplated by the parties (in the absence of language prohibiting other methods) does not preclude him from utilizing the only feasible process of

extracting the coal. In Rudd v. Hayden, 265 Ky. 495, 97 S.W.2d 35, it was pointed out that "mining" is not limited to the sinking of a shaft but may include other methods, including strip, which may be necessary to take possession of and remove the minerals conveyed.

Having decided that appellant is entitled to "strip mine" the coal, when is he liable to the surface owner for damage for destruction of the surface or the growing timber thereon?

■ Two fundamental rules for construction of deeds are set forth in McIntire v. Marian Coal Co., 190 Ky. 342, 227 S.W. 298, 299. They are:

"* * * that a deed which grants land and certain specified rights and privileges, there being no ambiguity in the instrument, will be construed according to its terms, and enforced strictly according to its terms. But, where there is ambiguity or uncertainty in the deed, it will be construed most strongly against the grantor and in favor of the grantee.

"* * * that the instrument shall be construed most strongly against the grantors and in favor of the grantee both upon the grant of the property and the rights and privileges specified."

See also Cornett v. Louisville & N. R. Co., 298 Ky. 95, 182 S.W.2d 230; Isaacs v. Inland Steel Co., 305 Ky. 777, 205 S.W.2d 681; Clements v. Morgan, 307 Ky. 496, 211 S.W.2d 164. In the Cornett and Isaacs cases, the deeds were very similar to the deed under consideration.

The deed in this case conveyed virtually all rights necessary to carry out the mining of the coal, including a waiver of damages. The reservations of timber and agricultural use in favor of the grantor were to be exercised only insofar as such uses were consistent with the rights conveyed to the grantee. It was obvious that the estate reserved to the grantor was to be subservient to the dominant estate of the grantee. The paramount purpose of the conveyance was to enable the grantee, or his successor in title, to remove the coal from under the surface of this land. The value of the land lay under the surface, not on it.

■ The rights of the respective owners of the surface and of the minerals underneath in similar deeds have been determined and declared. The owner of the mineral has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, unless this power is exercised oppressively, arbitrarily, wantonly, or maliciously, in which event the surface owner may recover for damages so occasioned. McIntire v. Marian Coal Co., 190 Ky. 342, 227 S.W. 298; Case v. Elk Horn Coal Corporation, 210 Ky. 700, 276 S.W. 573; Collins v. Lackey Mining Co., 219 Ky. 31, 292 S.W. 1091; Pike-Floyd Coal Co. v. Nunnery, 232 Ky. 805, 24 S.W.2d 614; Wells v. North East Coal Co., 255 Ky. 63, 72 S.W.2d 745; United Carbon Co. v. Webb, 282 Ky. 79, 137 S.W.2d 733; Treadway v. Wilson, 301 Ky. 702, 192 S.W.2d 949; Elk Horn Coal Corp. v. Johnson, Ky., 249 S.W.2d 745, second appeal Ky., 263 S.W.2d 124.

The validity and enforceability of a waiver of damages have been recognized as well as that of such grants of mining rights just discussed. The only qualification imposed in exercising these rights with respect to any given situation is that in order to be relieved of liability for damages, the rights must not be exercised arbitrarily, wantonly, or maliciously. Himler Coal Co. v. Kirk, 205 Ky. 666, 266 S.W. 355; Kentucky West Virginia Gas Co. v. Crum, 258 Ky. 508, 80 S.W.2d 537; Inland Steel Co. v. Isaacs, 283 Ky. 770, 143 S.W.2d 503; Trivette v. Consolidation Coal Co., 296 Ky. 529, 177 S.W.2d 868; Isaacs v. Inland Steel Co., 305 Ky. 777, 205 S.W.2d 681.

■ The rule has become so firmly established that it is a rule of property law governing the rights under many min-

eral deeds covering much acreage in Eastern Kentucky. To disturb this rule now would create great confusion and much hardship in a segment of an industry that can ill-afford such a blow. It is especially desirable that the law of property rights should remain stable after it has been settled. South's Heirs v. Thomas' Heirs, 7 T.B.Mon. 59, 23 Ky. 59. The doctrine of stare decisis requires that we do not depart from the established rule. Asher v. Bennett, 143 Ky. 361, 136 S.W. 879.

The judgment is affirmed in part and reversed in part on the appeal and is affirmed on the cross-appeal.