**MCI MINING CORPORATION and Cyprus Southern Realty Corporation, Appellants/Cross-Appellees,**

v.

**Adrian STACY, Appellee/Cross-Appellant.**

**Nos. 88-CA-574-MR, 88-CA-761-MR.**

Court of Appeals of Kentucky.

June 30, 1989.

As Modified on Denial of Rehearing Sept. 29, 1989.

Discretionary Review Denied by Supreme Court April 18, 1990.

Ronald G. Combs, Hazard, for appellants/cross-appellees.

Joe F. Childers, Lexington, for appellee/cross-appellant.

Before CLAYTON, HOWARD and WILHOIT, JJ.

HOWARD, Judge.

In this case, the appellants/cross-appellees appeal from a judgment of the Perry Circuit Court holding them liable to the appellee/cross-appellant for damages to a tract of land to which the parties each owned a one-half undivided interest in the surface estate and the lessor of the appellants/cross-appellees was the sole owner of the mineral estate, calculated on a per ton basis for each ton of coal mined from and each ton of foreign coal transported across the disputed surface tract. The appellee/cross-appellant filed a cross-appeal on the grounds that the trial court did not use the proper measure of damages.

Levi Stacy was the owner in fee of a 508–acre tract of land in Perry County. In 1903, Levi Stacy and his wife executed a deed conveying all the coal and certain other minerals, as well as the mining rights, to Kentucky Coal Land Company. That same year, Levi Stacy and Granville Williams and their wives, conveyed to Kentucky Coal Land Company the mineral adjacent to Levi's other tract. These mineral properties were subsequently acquired by Kentucky River Coal Corporation. In 1979, a lease of 26,000 acres in Perry County was executed by Kentucky River to the appellant/cross-appellee, Cyprus Southern Realty Corporation (formerly Southern Realty Resources). This lease included the Levi Stacy mineral tract and the Granville Williams mineral tract.

In the mineral severance deed, Levi Stacy reserved certain rights to the "2 acres around each of 3 dwelling houses" on the property. The grantors in the Granville Williams deed reserved certain rights to the "orchard and 2 acres around the house of said Granville Williams." The surface estates and the reserved rights passed to the descendants of Levi Stacy. Brack Stacy, the father of Adrian Stacy, owned 109 acres of the surface land overlying portions of both mineral tracts when he died intestate in 1969. On his death, the surface land passed to his surviving sons, Adrian Stacy and Fred Stacy.

On October 20, 1982, Cyprus Southern Realty purchased Fred Stacy's undivided ½ interest in the 109–acre tract for $50,000. Between the time of this purchase and December 31, 1987, Cyprus mined 383,000 tons of coal from beneath the jointly owned surface tract. During this same period of time, 6,172,674 tons of foreign or outside coal from other property was transported across the jointly owned surface tract.

The instant action was filed by Adrian Stacy on August 22, 1984. Stacy alleged that Cyprus was extracting coal by the strip method in the reserved areas and other areas. Stacy sought damages for such removal and for damages to the surface by the mining and the building of haul roads. Stacy also sought damages for transportation of foreign coal over these haul roads on a "wheelage" or per ton basis.

Shortly afterward, Stacy filed a motion for a restraining order to stop the mining but the motion was denied. However, Stacy's counsel stated in his brief that Cyprus, as a cotenant, did in fact have the right to use the jointly owned surface.

On August 28, 1986, Stacy filed an amended complaint. Again Stacy demanded that he be paid damages on a per ton basis for the foreign coal transported. In addition, Stacy claimed that he should be awarded damages on a per ton basis for the removal of coal from beneath the jointly owned property. According to Stacy, these latter damages were to be calculated by dividing the net profit realized by Cyprus divided by ½. Stacy also asked that the jointly owned property be ordered sold.

Cyprus filed a motion for summary judgment contending that under its rights in the mineral deed and its rights as the owner of ½ undivided interest in the surface, it could strip mine the coal under the jointly owned surface and transport foreign coal across that property without incurring any liability to Stacy. But if it were found to be liable for damages, Cyprus argued that the damages should be based on either diminution of market value of the surface or diminution in the value of its use. Cyprus also maintained that the reservations were so vaguely and indefinitely described that they were void.

Subsequently, Stacy filed a motion for a partial summary judgment on the questions of liability and the measure of damages. Stacy essentially restated the assertions made in the amended complaint.

On September 2, 1986, the trial court issued a partial summary judgment in favor of Stacy. The trial court, by Special Judge Don A. Ward, stated that the reservations in the deeds made it unclear whether Cyprus could exercise any rights under the deed to strip mine or haul through the reserved areas. The trial court continued that possibly because of this uncertainty, Cyprus purchased the ½ interest in the surface. Once Cyprus acquired this inter-

est, the trial court ruled, it had a fiduciary duty to account to their cotenants for the use of the land. The measure of damages was determined by the trial court to be ½ of "the standard surface royalties commonly paid for the right to surface mine property in the area" and ½ of the "standard wheelage rate" for all "foreign coal hauled across the jointly owned surface.

A bench trial on the damages question was held before Circuit Judge Calvin N. Manis on February 8 and 9 of 1988. The trial court ruled that "the standard surface royalty" in the area was $.50 per ton of clean or saleable coal removed from the jointly owned surface. Stacy's share of these royalties was $.25 multiplied by 363,000 tons mined or $90,750. The trial court found that the "standard wheelage rate" in the area was $.10 per ton. Stacy's share of these amounts would be $.05 multiplied by 6,172,674 clean coal transported across the jointly owned property or $308,634. The total amount owed to Stacy was $399,384.

Judge Manis, in the final judgment in this case, made a number of findings of fact and conclusions of law regarding other matters, including the issues as to the so-called "reserved areas." In paragraphs 10, 11 and 12 of same, he found that there was no coal removed from these areas nor was there any coal transported across these areas. No appeal having been taken from these findings, any questions in regard to these "reserved areas" are now moot and will not be further considered in this opinion.

Cyprus contends that it had no liability for damages to Stacy for surface mining the property in question based on its "broad form deed" rights.

The question which first requires resolution is whether the mineral deeds are in fact broad form deeds.

In *Akers v. Baldwin*, Ky., 736 S.W.2d 294, 198 (1987), the Court discussed the definition of "broad form deeds" in the following manner:

The somewhat apocryphal term 'broad form deed' is loosely defined as a conveyance which severs the mineral estate from the surface estate and which has a long and tedious description of granted rights as opposed to those mineral deeds which grant only necessary and convenient mining rights, or no mining rights at all. It is a particular, if not unique, form of deed which normally conveys all of the minerals under the surface. It may, however, list only certain specific substances. Additionally, such a deed conveys—specifically to the grantee—surface rights the grantee deems necessary or convenient for the full and free exercise and enjoyment of the minerals conveyed. Some deeds, if not most, contain an express waiver of liability for damages arising from the grantee's use of the surface in obtaining the minerals. Lastly, most such deeds reserve to the grantor only such surface rights as may be consistent with the mineral rights conveyed.

Both deeds in question sever the mineral estate from the surface and contain lengthy descriptions of the rights granted rather than a grant of only necessary and convenient mining rights. In the Levi Stacy deed, all the minerals were conveyed except the oil and gas. All of the minerals were conveyed in the Granville Williams deed.

The right to "make such use of the surface or any part thereof as may be deemed neccessary (sic) or convenient in mining, operating, manufacturing or transporting the said minerals and mineral products" was granted in the Levi Stacy deed. The grantee of that deed was also given "any and all other privileges that are or will be reasonably necessary or convenient for the full enjoyment of the privileges hereby conveyed."

This latter provision also appears in the Granville Williams deed. While there was no clause which literally granted the "use of the surface" as in the Levi Stacy deed, other rights to use the surface were granted. For example, the grantee was given the right to use all timber 14 inches or less for building railroads, tramways or haul roads to place these ways anywhere except the orchard and 2 acres around the house,

to build and operate tipples or other necessary structures, and to enter upon the land to remove any minerals including stone or water that may be necessary or useful in the mining operations. Both deeds contain waiver of damage clauses.

We conclude that based on characteristics stated in *Akers, supra,* the Levi Stacy and Granville Williams deeds are both broad form deeds. Stacy's arguments to the contrary are misguided. While asserting that the deeds are not broad form deeds, Stacy argues that the language of the deeds, such as the clauses reserving timber over 14 inches, shows the intention that strip mining was not intended by the parties. In the important case of *Buchanan v. Watson,* Ky., 290 S.W.2d 40 (1956), the "broad form deed" at issue reserved in the grantor the timber except that necessary for mining and the use of the land for agricultural purposes. Such reservations do not affect the characterization of the deeds. *Isaacs, et al v. Inland Steel Co.,* 305 Ky. 777, 205 S.W.2d 681 (1947).

The Court in *Akers, supra,* upheld the principle that the owner of the mineral estate under a broad form deed may use any or all of the surface to extract the underlying mineral except the use may not be oppressive, arbitrary, malicious or wanton. However, the court overruled that part of *Buchanan v. Watson, supra,* which denied damages to the surface owner. The period between May 6, 1956 (the effective date of *Buchanan v. Watson, supra* ) and July 2, 1987 (the date *Akers, supra,* was initially rendered) was excepted by the court from the effect of its decision. Consequently, any "conveyances, leases, and mining efforts made under broad form deeds during that period would still be governed by *Buchanan v. Watson, supra.*" *Akers, supra,* at 307.

The lease in the case at bar was executed in 1978. Therefore, Cyprus, as the mineral owner, had a right under *Akers, supra,* to use the surface without paying damages under the rights granted in the broad form deeds.

■ Stacy concedes that Cyprus had a right to disturb the surface to mine the underlying mineral because it was a cotenant. However, Stacy argues that Cyprus was liable for damages because he was ousted from the jointly owned surface. Cyprus contends that it had the right as a cotenant to use the surface for mining purposes without incurring liability for damages.

It is stated in *Taylor v. Farmers and Gardeners Market Association,* Ky., 295 Ky. 126, 173 S.W.2d 803, 807, 808 (1943), quoting *Crawford v. Wiedemann,* 170 Ky. 613, 186 S.W. 509 (1916), as follows:

> The general rule seems to be, that if there has been an actual ouster of one cotenant by another, accompanied by a claim of adverse holding as against the ousted one, rent for use and occupation, may, under certain circumstances, be recovered by the ousted tenant from the one who ousted him, especially if the property is incapable of occupation except as an entirety, and the tenant in possession after such ouster occupies and uses all of it. But, however this may be, running throughout all the books will be found two essential elements which must exist before the tenant sought to be charged is liable. These are: (a) That the tenant sought to be charged and who is claimed to be guilty of an ouster must assert exclusive claim to the property in himself, thereby necessarily including a denial of any interest or any right or title in the supposed ousted tenant, (b) he must give notice to this effect to the ousted tenant or his acts must be so open and notorious, positive and assertive, as to place it beyond doubt that he is claiming the entire interest in the property.

In the partial summary judgment, the trial court ruled that there had been an ouster. But much of the evidence which Stacy claims in his brief as supportive of his position was not presented until the trial on the damages issue. That evidence principally consisted of allegations that Stacy had been prevented by Cyprus's armed guards from entering the area where actual mining was taking place. A Cyprus employee explained at the damage trial

that these actions were taken for safety reasons.

In any event, the factual question of whether Cyprus had performed an ouster of Stacy was in dispute. A summary judgment is only proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Issacs v. Cox*, Ky., 431 S.W.2d 494 (1968), CR 56.03. Summary judgment on this issue was premature and it should be further considered on remand.

■ The proper measure of damages, should an ouster be found, is rent for use and occupation. *Taylor, supra.* Rent for use and occupation would not be based upon per ton wheelage payments that are sometimes used in private contracts. *Middle States Coal Co. v. Hicks*, Ky.App., 608 S.W.2d 56 (1980); *Triple Elkhorn Mining Co., Inc. v. Anderson*, Ky., 646 S.W.2d 725 (1983). Damages should be based upon the difference in the fair market value of Stacy's property interest immediately before the mining took place and the fair market value of same immediately after the mining if the damage is found to be permanent. If the damage is temporary, the measure of damage is the diminution in the value of its use. *Pike–Floyd Coal Co. v. Nunnery*, 232 Ky. 805, 24 S.W.2d 614 (1930); *Middle States Coal v. Hicks, supra; Triple Elkhorn Mining Co., Inc. v. Anderson, supra.* Stacy claims in the cross-appeal that the measure of damages should be the reasonable market value of the coal after it was mined from the common property, less the reasonable costs incurred in producing it based on *Taylor v. Bradford*, Ky., 244 S.W.2d 482 (1951). *Taylor, supra*, is clearly distinguishable on its facts.

■ In *Taylor, supra*, the cotenancy was in the entire estate, both mineral and surface. When one cotenant removed coal from the jointly owned property, that cotenant was under a duty to account for the other cotenant's share realized from the mining. *Taylor, supra.* But the mineral estate was severed from the surface estate in the case at bar. Unlike *Taylor, supra*, Stacy had an interest only in the surface, not in the mineral. Therefore, Stacy had

no claim to an accounting based on the market value of the coal mined. The fact that Cyprus has the mineral estate and is also a cotenant in the surface puts no duty on Cyprus to make an accounting because of the doctrine of severability of estates.

Cyprus also contends that it had the right to transport foreign coal across the disputed surface tract without incurring any liability to Stacy.

■ Stacy concedes that Cyprus had a right to transport foreign coal over the jointly owned surface. Cyprus built a haul road across the jointly owned surface which was allegedly 80 feet in width. Stacy asserts that Cyprus was only given the right to transport foreign coal across the tract by railroad or tramway and that the haul road was an enlargement of the easement required for those means of transportation.

The trial court specifically found that no foreign coal was hauled by Cyprus across the surface overlying the Granville Williams tract and Stacy does not challenge that finding. Thus, the only deed in question is the Levi Stacy deed. One clause of that deed where the right to transport foreign coal was granted does state "the exclusive right of way for any and all railroads, tram-roads excepting...." But, elsewhere in the deed, it is stated that the grantee is granted the right "to make use of the surface of any part thereof as may be deemed neccessary (sic) or convenient in ... transporting ... such [minerals or mineral products] as may be produced from other lands belonging to" the grantee.

We also note that the right to use all timber 14 inches or less in diameter to construct "railroads, branch lines thereon, tram-roads, haul roads and other ways ... in the mining, using, manufacturing or transporting the said minerals and mineral products." While the right to transport foreign coal is not expressly granted in this clause, however, we think that it shows the parties contemplated that the means of transporting the minerals would not be restricted to only railroads and tramways.

In construing deeds, the courts are required to look at the four corners of the instrument in order to ascertain the grantor's intention and all valid provisions will be given effect. *Gabbard v. Short,* Ky., 351 S.W.2d 510 (1961). The express provisions of the deed referring to transportation, together with the broad rights to use the surface, in our view, authorized Cyprus to use the 80–foot haul road for transporting foreign coal.

We reverse and remand on the direct appeal and affirm in part and remand in part on the cross-appeal for proceedings, in both appeals, consistent with this opinion.

All concur.