## Case v. Elk Horn Coal Corporation.

(Decided October 20, 1925.)

### Appeal from Floyd Circuit Court.

1. Mines and Minerals—Coal Company Held Within Rights Under Deed in Objecting to Surface Owner's Construction of House on Proposed Route of Power Transmission Line.—Coal company which by deed was granted right to use surface land and to erect any buildings, machinery, or equipment that it deemed necessary or convenient, held not to have acted arbitrarily in objecting to surface owner's construction of residence on route to be used for electric power transmission line, though line was not constructed until two years later.

2. Mines and Minerals—Coal Company, Entitled Under Deed to Remove Mine Supports, Held Not Liable for Damages to Fence from Cave-in.—Coal company, entitled under deed to remove all pillars

and lateral supports from mines, held not liable to surface owner for breakage of fence caused by cave-in of mine at drift mouth.

3. Mines and Minerals—Coal Company Held Not Required Under Deed to Restore Fences, Except such as were Opened for its Use. —Where fences were down on land when acquired by plaintiff, he cannot complain that coal company, his grantee of subsurface rights with privilege of using surface as necessary, did not restore fence, though it was liable to close gaps which it let down.

B. F. COMBS and A. J. MAY for appellant.

B. M. JAMES for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

T. G. Allen was formerly the owner of a large body of land in Floyd county. In 1908 he and his wife conveyed the minerals therein by deed of general warranty to the Laclede Coal Company, which in turn conveyed same to the Elk Horn Coal Corporation. Allen reserved the surface which descended to, and was divided among, his children, and in 1919 and 1920 they conveyed to Emery Case, who is now the owner of the surface in the entire tract. The Elk Horn Coal Corporation has developed the property by opening several coal mines and equipping them with electrical machinery which is operated by a high voltage current, transmitted from Jenkins, Ky., by means of overhead wires strung on poles across this land.

In this action Case seeks to recover from the Elk Horn Coal Corporation for several alleged injuries to his estate. Issues were joined on each of the various counts and a trial had. On proof heard the court gave a peremptory instruction for defendant on all of the counts in his petition, except one, viz., for a trespass to his garden, for which judgment was entered, no complaint being made as to it. Plaintiff appeals, the sole question being the propriety of the peremptory instruction.

The evidence for plaintiff conforms to the issues in the pleadings, and while contradicted by defendant's witnesses, conduces to show that in the year 1922 the defendant cleared a strip of land from 25 to 50 feet wide and 800 feet long, ostensibly for a transmission line. It ran through some small timber and as much as $150.00 worth of timber was left on the ground to rot, but that the line was not constructed; (2) that plaintiff selected a place for a house site and drove a stake down indicating

his purpose; that defendant's superintendent told him that the company was intending to run a transmission line along that place and did not build his house there, that it would be torn down if he did; that thereupon plaintiff moved his site 210 feet away and erected his residence elsewhere and was thereby damaged in the sum of $1,000.00. (3) That plaintiff cut the timber from the land and had about 2,000 logs hauled to a yard preparatory to sliding them down a hill; that the slide was in close proximity to one of defendant's electric power line poles; that in order to protect this pole plaintiff buried a post five feet in the ground that would have prevented any logs from striking it, but defendant objected to his sliding the logs down at that place unless the plaintiff would procure another power pole for it to remove the line; that he did procure such pole and that thereupon defendant did remove its line and permit him to use the slide for the logs, but he was thereby delayed for a period of seven weeks and was unable to have his logs sawed in regular order by reason of which a number of them were lost in a flood and in various ways the delay damaged him $500.00 at one set and $2,000.00 at another. (4) Defendant had for a number of years hauled its timber through the fences on the back of his farm and left the gaps open. These were down when he purchased the land and by reason of defendant's failure to put them up he lost the pasturage of the land and was thereby damaged. (5) One of the mines broke in at the drift mouth and left the posts with two strands of wire hanging in the air for a distance of about 150 feet, leaving his field unenclosed.

As both parties derive their title from T. G. Allen their respective rights are to be determined by the construction of the deed from T. G. Allen to the Laclede Coal Company. The granting clause in that deed is very elaborate, filling five pages of typewritten matter, and reading in part as follows:

"Conveying all the minerals, &c., . . . and such of the standing timber thereon as may, at the time of the use thereof, be or by the party of the second part, its successors or assigns, be deemed necessary or convenient for mining purposes, or so deemed necessary or convenient for the exercise and enjoyment of any or all the property rights and privileges herein bargained, sold, granted, or conveyed . . .

and the exclusive rights of way for any and all . . . haul roads and other ways, pipe lines, telegraph and telephone lines, that may be hereafter be located on said land by the parties of the first part, their heirs, representatives or assigns, or by the party of the second part, its successors or assigns, or by any person or corporation with or without the authority of either of said parties, their or its heirs, representatives, successors or assigns . . . and to use and operate the surface thereof and any and all parts thereof . . . and also the right to build, erect, alter, repair, maintain and operate upon said land . . . any and all houses, shops, buildings, . . . and machinery and mining and any and all equipment, that may by the party of the second part, its successors or assigns, be deemed necessary or convenient for the full and free exercise and enjoyment of any and all the property rights and privileges hereby bargained, granted, sold or conveyed; . . . and the right to remove all pillars and other lateral and subjacent supports (from the mines) without leaving pillars to support the roof or surface; . . . and the right to erect upon said land, and maintain, use, repair and operate, and at their pleasure remove therefrom any and all buildings and machinery and mining and any and all equipment, whether specifically enumerated herein or not, that may by party of the second part, its successors or assigns, be deemed necessary or convenient for the exercise or enjoyment of any or all of the property, rights and privileges herein . . . granted or conveyed and also free access to, upon and over said land for the purpose of surveying and prospecting for said property and interests. . . . And it, said party of the second part, its successors and assigns, to have unlimited time in which to do so, and shall not be limited to commence the exercise or enjoyment of all or any of said property, rights and privileges at any particular or reasonable time; and when so commenced shall not be deemed to have abandoned nor forfeited the same, nor any part thereof by a, or any cessation thereof, or any part thereof. . . . But there is reserved to the parties of the first part all the timber upon the said land, except that necessary for the purposes hereinbefore mentioned; and there is also reserved the free use of said land for agricul-

tural purposes so far as such use is consistent with the rights hereby bargained, sold, granted and conveyed; and the right to mine and use coal for their own personal household and domestic use.''

In this deed the minerals and so much of the standing timber as the grantee may deem necessary or convenient for mining purposes are conveyed; also vendee is granted the use of the surface for every purpose that it may deem necessary or convenient in the prosecution of its mining business, with the right to remove all pillars and other lateral supports in its mines without leaving any support to the roof or surface, and it is expressly given unlimited time in which to commence and complete its operations, with a provision against forfeiture if it delay so doing. The vendor reserves to himself the timber not necessary for the purposes mentioned, and the use of the land for agricultural purposes so far as such use is consistent with the rights conveyed; and the right to mine and use coal for domestic purposes.

Clearly, the defendant has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, and of this it is to be the judge, and unless it exercised this power oppressively, arbitrarily, wantonly or maliciously, plaintiff cannot complain. Defendant had a right to locate and construct a transmission line and to object to plaintiff erecting a residence on that route, and the fact that it has not constructed the line within two years is not sufficient to show an arbitrary exercise of power by it; or that it was actuated by improper motives in the acts mentioned. It is also given the right to remove the support in the mines and plaintiff cannot complain of its action in so doing. In hauling over the farm no doubt it was the duty of defendant to close fence gaps which it let down for the purpose of passage, but plaintiff's proof shows these gaps were open before he purchased the land, his complaint being that they were not restored thereafter. We do not think he is entitled to recover for this. He cannot recover for anything occurring before he purchased the land, and it does not appear that defendant opened any gaps after his purchase.

This construction is supported by the ruling in McIntire v. Marion Coal Co., 190 Ky. 342. That ruling was made in an injunction proceeding before a member of this court, but the views therein expressed met the approval

of four members of the court and may be considered, even though it is not binding as an opinion of the court.

Wherefore, perceiving no error, the judgment is affirmed.