## Treadway et ux. v. Wilson.

March 1, 1946.

A. D. Hall for appellants.

C. C. Smith for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to July 29, 1907, William Marcum owned 500 acres of land in Clay County, Kentucky. On that day he and his wife conveyed to F. D. Sampson, for the consideration of $2,000 then and there paid, all of the minerals of whatsoever character under the surface of his entire tract. In addition to the conveyance of the minerals certain specified rights of the grantee in that conveyance to the use of the surface in extracting the minerals were also granted, which are: "room on the surface of the lands above described for tipples, entries, shafts, wells, slate pits, prospect holes, roads, passways and all easements necessary in mining and removing all said mineral at any and all times, and second party is also granted enough small timber from the surface of the lands described to supply the mines with props and caps and all mine timbers."

By mesne conveyances the appellee, and plaintiff below, Pleaz C. Wilson, became the owner of the minerals, as well as the surface rights granted by the mineral deed; whilst appellant, and defendant below, Hansford Treadway, became the owner of about 19 acres of the surface.

A dispute and controversy arose between the owners of the respective estates as to the rights and privileges of appellee as owner of the minerals under the 19 acres to the use of the surface in extracting them. Finally appellee filed this declaratory judgment action in the Clay circuit court on October 5, 1945, against appellant as the surface owner of the 19 acres, seeking a judgment defining plaintiff's rights in and to the use of the surface owned by defendant.

The petition set out the above facts respecting the title to each of the respective estates, and averred that defendant, the surface owner, objected to plaintiff extracting the coal from under the 19 acres, and plaintiff sought an injunction restraining defendant from interfering with him in the exercise of his rights in extracting the coal from under defendant's surface. The de-

fendant filed what his counsel stated was a special demurrer, but it was in reality a plea in abatement, in which it was stated that there were a number of other surface owners of different parts of the entire 500 acres, and that they should be made parties to the litigation. The court overruled that plea, followed by a general demurrer of defendant to the petition, which the court also overruled. Before the special demurrer was acted on plaintiff moved for a submission of the case "on the special demurrer of defendant and also entered his motion to submit the case for final judgment," which the court sustained. That order was entered on October 24, 1945, and two days thereafter there appears this order:

"Came defendant by counsel and produced and *filed* in office at 9:45 A. M. their answer to the petition of plaintiff herein, and the same is now noted of record." (Our emphasis.)

The answer averred that plaintiff proposed to extract the coal from under defendant's surface by a process known among miners as "dead-lifting" the coal from under the surface, and which process is sometimes designated as "stripping" the soil above the coal and then extracting the mineral. The answer then averred that such process was unnecessary to enable plaintiff to mine the coal under appellant's surface, and that an opening had been made by him in the extraction of coal for his domestic use through which plaintiff could extract all of the coal underlying his surface. It was also averred that such entries had been made on immediately adjoining land (a part of the 500 acres) through the use of which plaintiff might also extract the coal from under defendant's surface. Defendant, therefore, denied the necessity for plaintiff in obtaining the coal to employ the process of "dead-lifting" or "stripping" the surface above the coal, which defendant averred would virtually destroy his entire surface by the openings thus made, and by the depositing of the removed surface on other portions of his 19-acre tract, 15 acres of which was alleged to be bottom land furnishing the only cultivatable portion of his surface ownership.

On November 7, 1945, defendant moved to set aside the prior order submitting the case for final judgment after the demurrers to the petition were overruled, but

which the court overruled, and on the same day the court entered this order:

"The Court having considered of the motion of the defendants to file and make a part of the record herein, the verified answer of the defendants, and being sufficiently advised overrules said motion, but orders and directs that same be tendered and offered to be filed and made a part of the record herein; and to which and all of which the defendants at the time objected and excepted to the ruling of the Court."

With the record in that condition the court on November 15, 1945, entered final judgment in which it was adjudged that "it will be necessary to strip the surface from over said minerals and dead-lift said minerals therefrom." It further declared that plaintiff had the right to extract the coal from under defendant's surface through the dead-lifting process, and defendant was enjoined from interfering therewith. From that judgment defendant prosecutes this appeal.

The rights of the respective owners of the surface, and of the owners of minerals thereunder—where privileges of the mineral owner in the use of the surface in extracting his minerals are similar to those contained in the mineral deed in this case—are declared and determined by this court in the cases of Case v. Elkhorn Coal Co., 210 Ky. 700, 276 S. W. 573; Pike-Floyd Coal Co. v. Nunnery, 232 Ky. 805, 24 S. W. 2d 614, and Wells v. North East Coal Co., 255 Ky. 63, 65, 72 S. W. 2d 745. In the Case opinion we said [210 Ky. 700, 276 S. W. 574]:

"Clearly the defendant (mineral owner) has the paramount right to the use of the surface in the prosecution of its business for any purpose of necessity or convenience, and of this it is to be the judge, unless it exercises this power oppressively, arbitrarily, wantonly, or maliciously." (Our parenthesis)

The other cited cases approve and apply the same qualified rule measuring the rights of the mineral owner. The tendered answer in this case averred, in substance, that the proposed process of taking the coal from under defendant's surface as plaintiff threatened to do (and as the court adjudged) would be an *oppressive* exercise of defendant's granted privilege under the facts alleged

in the answer tendered by the defendant which the court finally rejected and refused, and overruled defendant's motion to file it. However, the order then made permitted the tendered answer to be made a part of the record. Since the answer was not filed, no reply was made thereto contradicting the averments contained in it, and the court's order overruling defendant's motion to file his answer was tantamount to denying defendant the right of defending the action. It is therefore clear that the court erred in overruling defendant's motion to file his tendered answer raising the issue of *oppressive* exercise of plaintiff's granted privilege under the facts averred therein.

Wherefore, the judgment is reversed with directions to set it aside and to permit defendant to file his answer, and if contraverted to then hear evidence upon the issues so raised and determine the rights of the parties accordingly.