**PEABODY COAL COMPANY, Plaintiff-Appellee,**

v.

**P. C. PASCO et al., Defendants-Appellants.**

**No. 71–1187.**

United States Court of Appeals,
Sixth Circuit.

Dec. 15, 1971.

James O. Overby, Murray, Ky. (Donald A. Jones, Overby & Jones, Murray, Ky., on the brief), for appellants.

Daniel Cornette, Greenville, Ky. (Jarvis, Cornette & Payton, Greenville, Ky., on the brief), for appellee.

Before CELEBREZZE, PECK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

Peabody Coal Company in a diversity action in the district court sought a declaratory judgment granting it the right to strip mine three tracts of land in which Peabody holds the coal rights. Peabody traces its title to the coal underlying the land involved here from two mineral deeds. A 1919 deed conveyed all the coal underlying tract #1 and granted certain mining rights; a 1914 deed conveyed the coal underneath tracts #2 and #3 and also granted mining privileges. Peabody contended in the court below that the mining rights granted by the two deeds included the right to strip mine the surface of the land involved. The defendants below, P. C. Pasco, et al., own and occupy the surface of the three tracts of land and denied that the mineral deeds granted the right to strip mine. Both parties moved for summary judgment and the district court, finding no genuine issue of material fact, granted judgment for Peabody declaring that the coal company had the right to strip the subject property. From that judgment, Pasco, et al., appeal.

Because this case is in federal court solely on diversity of citizenship grounds, Kentucky law will, of course, apply. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It should be noted at the outset that ordinarily a conveyance of mineral rights creates two separate and distinct estates in land. Asher v. Gibson, 198 Ky. 285, 248 S.W. 862 (1923). One person may own the surface estate while another person owns the mineral estate, and each estate is subject to the laws of descent, and may be devised or conveyed. Kincaid v. McGowan, 88 Ky. 91, 4 S.W. 802 (1887). The Kentucky courts have found, however, that some deeds grant such overwhelming mining rights that the mineral owner in fact has the right

to destroy the surface estate. Martin v. Kentucky Oak Mining Co., 429 S.W.2d 395, 399 (1968).

The leading case of Buchanan v. Watson, 290 S.W.2d 40 (1956), was the first Kentucky decision specifically holding that a particular deed allowed the mineral owner to use the strip mining process. The mineral deed in that case was a standard "broad form" deed commonly used in the Appalachian region in the early 1900's. The Buchanan deed, the pertinent language of which is set forth below, granted the mineral owner extensive rights in the use of the surface for mining purposes.[1] In particular, that deed granted rights in, of, to, on, and under the land; allowed the grantee to use the surface in any and every manner deemed necessary or convenient for mining; released the grantee from liability for damage done to the surface; and reserved to the grantor the use of the land for agricultural purposes only to the extent that such use would be consistent with the rights conveyed to the mineral owner.

The two mineral deeds in question in the instant case differ in varying degrees from the typical "broad form" deed.[2] Appellant Pasco contends that

[1]. " ' * * * property, rights and privileges, in, of, to, on, under, concerning and appurtenant * * * All the coal, minerals and mineral products, * * * such of the standing timber as may be, or by the Grantee, his heirs or representatives, its successors, or assigns, be deemed necessary for mining purposes, * * * use and operate the same and surface thereof, * * * in any and every manner that may be deemed necessary or convenient for mining, and therefrom removing, * * * and in the use of said land and surface thereof by the Grantee, his heirs or representatives, successors and assigns, shall be free from, and is, and are, hereby released from liability or claim of damage to the said Grantor, their representatives, heirs and assigns, * * * there is reserved to the Grantor all the timber upon the said land, except that necessary for mining, and the purposes hereinbefore mentioned, and the free use of land for agricultural purposes, so far as such use is consistent with the property, rights and privileges hereby bargained, sold, granted or conveyed, and the right to mine and use coal for Grantor's own personal household and domestic purposes.' " (Omissions theirs.)

2. The 1919 deed granting the mineral rights to tract #1 reads in relevant part: " * * * parties of the first part * * * does hereby sell, grant and convey unto the party of the second part, its successors and assigns, all of the coal and minerals, excluding the oil and gas, underlying a certain tract or parcel of land, located on the waters of Cypress Creek in Muhlenberg County, Kentucky, with all the rights and privileges necessary to go in and under said tract of land and mine and remove therefrom said coal and minerals with the right to use any underground passages constructed through and under said tract of land for the purpose of transporting coal and minerals and other substances from other tracts of land, the said tract of land, by a survey made * * * "
The 1914 deed granting the coal rights to tracts #2 and #3 reads in relevant part as follows:
"Said party of the first part does hereby grant and convey to the party of the second part, its successors and assigns, forever, the full free and unrestricted right and privilege to mine and remove the coal from underneath the land herein conveyed, without liability for any damage that may arise to the surface of said land or any improvements thereon, by reason of said mining and removal of said coal; together with the right of ingress and egress to and from said land for said purposes; together with the right to discharge water and other substances from the mine or mines necessary in carrying on the operations of mining and removing the said coal upon the said surface without liability for any damage resulting therefrom; together with the right to use the underground passages which may be made and constructed under this land for the transportation of coal or any other substances to or from adjoining or other land to or from which the party of the second part, its successors or assigns, may desire to transport such coal and other substances, without further or any charge for such use of such underground passages; together with the right to bore and drill upon said land for prospecting purposes, for the purpose of sinking wells into the mine or mines

the cases following the *Buchanan* decision were based on "broad form" deeds and maintains that the present deeds are not so broad and thus do not grant the right to strip. Peabody argues that it is immaterial whether the mineral severances here are "broad form" because the deeds indicate that the mineral owner has the paramount right to the use of the surface. To determine the question whether the two deeds allow the coal owner to strip the land it will be necessary to examine the Kentucky decisions, first to determine the controlling considerations and second, to interpret the present deeds in light of such considerations.

Our examination of the Kentucky decisions involving the right to strip indicates that the Kentucky Court of Appeals has been in a process of crystallizing its approach to this question. Each party to this case pinpoints isolated excerpts from particular cases in support of its position. Although we find the parties' reliance upon such isolated language from the early cases unhelpful, it is necessary to place these decisions in perspective.

In the earliest case involving the issue of the mineral owner's right to strip mine, the court did not decide the question but rather remanded the action to the trial court to allow the surface owner to file an answer. Treadway v. Wilson, 301 Ky. 702, 192 S.W.2d 949 (1946). The *Treadway* deed conveyed the following surface rights:

"room on the surface of the lands above described for tipples, entries, shafts, wells, slate pits, prospect holes, roads, passways and all easements necessary in mining and removing all said mineral at any and all times, and second party is also granted enough small timber from the surface of the

for the removal of water therefrom or for any other purposes and in short to have, use and enjoy all proper, necessary and legitimate rights, powers, privileges and easements in and about said

lands described to supply the mines with props and caps and all mine timbers." 192 S.W.2d at 949.

The Court of Appeals in a dictum stated that the rights of the respective owners of the surface and of the minerals had been declared in the case of Case v. Elk Horn Coal Co., 210 Ky. 700, 276 S.W. 573 (1925). That case involved a determination of whether the surface owner or the mineral owner had the paramount right to use a portion of the surface. The deed was clearly "broad form" in nature and, as the court noted, conveyed to the mineral grantee among other rights, the following privileges:

"In this deed the minerals and so much of the standing timber as the grantee may deem necessary or convenient for mining purposes are conveyed; also vendee is granted the use of the surface for every purpose that it may deem necessary or convenient in the prosecution of its mining business, with the right to remove all pillars and other lateral supports in its mines without leaving any support to the roof or surface, and it is expressly given unlimited time in which to commence and complete its operations, with a provision against forfeiture in delay in so doing. The vendor reserves to himself the timber not necessary for the purposes mentioned, and the use of the land for agricultural purposes, so far as such use is consistent with the rights conveyed; and the right to mine and use coal for domestic purposes." 276 S.W. at 574.

In *Treadway*, the court found the deed "similar" to the *Case* deed and quoted the *Case* holding:

"Clearly the defendant (mineral owner) has the paramount right to the use of the surface in the prosecution of its business for any purpose of

land on the surface or underneath the surface thereof incident to and required by the successful and profitable mining and removal of the coal herein conveyed."

necessity or convenience, and of this it is to be the judge, unless it exercises this power oppressively, arbitrarily, wantonly, or maliciously." 192 S.W. 2d at 950.

Appellant Pasco questions the similarity of the two deeds and argues that the holding in *Case* that the mineral owner had the paramount right to a portion of the surface for the construction of a transmission line does not support the contention that the surface may be destroyed. Peabody, on the other hand, argues that *Treadway* indicates that a non-"broad form" deed may allow stripping. We do not think the disputed dictum has been accorded particular significance by the Court of Appeals. In fact, the dictum has been characterized as stating that "strip mining can be done under the broad form deed so long as it is not done 'oppressively'". Martin v. Kentucky Oak Mining Co., *supra*, 429 S. W.2d at 396. Such in fact was the holding of *Buchanan*. 290 S.W.2d at 42–43.

The *Buchanan* case interpreted a "broad form" deed as granting the right to strip but apparently based its decision on the following reasoning:

"... the appellant had the right to remove all of the coal in, on, and under the surface of this tract, the particular method contemplated by the parties (in the absence of language prohibiting other methods) does not preclude him from utilizing the only feasible process of extracting the coal. ... '[M]ining' is not limited to the sinking of a shaft but may include other methods, including strip, which may be necessary to take possession of and remove the minerals conveyed." 290 S.W.2d 42, 43.

This rationale and the expansive language used by the Court of Appeals could reasonably be interpreted as indicating that any deed of all coal also granted the right to strip. Subsequent to the *Buchanan* decision, a number of Kentucky cases concurred in the holding that under a "broad form" deed, the mineral owner has the right to strip

mine and is liable to the surface owner only in the event of an arbitrary, wanton, or malicious exercise of that right. Bevander Coal Co. v. Matney, 320 S.W. 2d 301 (1959); Blue Diamond Coal Co. v. Neace, 337 S.W.2d 725 (1960); Kodak Coal Co. v. Smith, 338 S.W.2d 699 (1960); Ritchie v. Midland Mining Co., 347 S.W.2d 548 (1961); Blue Diamond Coal Co. v. Campbell, 371 S.W.2d 483 (1963); Croley v. Round Mountain Coal Co., 374 S.W.2d 852 (1964); Martin v. Kentucky Oak Mining Co., 429 S.W.2d 395 (1968).

In Croley v. Round Mountain Coal Co., *supra,* the Court of Appeals considered a reservation of mineral rights and the question whether the terms of the reservation allowed the grantor of the surface the right to extract the coal by strip mining. The owner of the land in that case deeded the surface estate to Croley's predecessor in title, with the following reservation:

"Reserving all coal, oil, gas, stone, water and any other minerals in, on or under the land, together with the right of ingress and egress to take, enter, mine, cut and remove any and all minerals in, on or under the land. In the event any of the operation in the reservation aforesaid injures or damages any growing crop on the surface, then the person so damaging the growing crop shall pay for the damage done. Second party is given the right to mine for his own use only in his dwelling only coal from the premises, provided his action in so doing does not interfere in any operation of the first party under the reservation, or anyone under it." 374 S.W.2d at 853.

The Court noted that the deed was made in 1948 when strip mining was fairly common and stated that therefore it could not be said that the parties could not have contemplated that method of mining. In concluding that the reservation expresses "the intention of the parties that the owner of the minerals shall have the right to destroy the surface to the extent necessary to remove

the minerals," the Court said of the instrument:

"The reservation in the instant case not only reserves 'all' coal, but also oil, gas, *stone, water*, and 'any other minerals in, on or under the land,' with the right to 'take, enter, mine, cut and remove any and all minerals in, on or under the land.' Obviously, *all* coal could not be removed by the deep mining process. Removal of *stone* normally would require substantial destruction of the surface. We think the parties must have intended that the minerals could be removed by any recognized method or process." (Emphasis by the Court) 374 S.W.2d at 854.

Standing alone, *Buchanan* and *Croley* could be read as saying that any deed of *all* coal *automatically* grants the right to strip. Peabody seems to urge this interpretation by its heavy reliance upon the *Croley* decision's emphasis on the word "all." Peabody apparently contends that the grant of all coal indicates that the original parties to the mineral deed intended that the mineral owner should have the dominant estate and thus the right to destroy the surface estate. We would be persuaded to this view were it not for the later decision in Martin v. Kentucky Oak Mining Co., *supra.*

In *Martin,* the Kentucky Court of Appeals was again faced with interpreting a "broad form" mineral deed which had been executed in 1905. The surface owner sought a declaration that the mineral owner did not possess the right to strip mine. The Court stated that the "issue in the instant case is simply whether the court shall stay with Buchanan v. Watson and the subsequent cases based upon it." It seems reasonable to conclude that if the Kentucky court had intended to follow the Peabody interpretation of *Buchanan* and *Croley* it would have simply stated that a conveyance of minerals underlying a tract of land also conveys the right to strip mine for the removal of those minerals. But the Court of Appeals did not rely upon either the expansive rationale of *Buchanan* or the "all" language of *Croley*. *Martin* was not decided on the basis that the mineral owner "had the right to remove all of the coal in, on, and under the surface of this tract," *Buchanan,* 290 S. W.2d at 42–43; nor was it decided on the fact that *"all* coal could not be removed by the deep mining process," *Croley,* 374 S.W.2d at 854.[3] Instead, the Court of Appeals set forth the analysis to be used in determining whether the mineral owner possessed the right to strip mine.

After summarizing arguments against interpreting mineral deeds to allow stripping, the Court of Appeals stated:

"Whether or not the parties actually contemplated or envisioned strip or auger mining is not important—the question is whether they intended that the mineral owner's rights to use the surface in removal of the minerals would be superior to any competing right of the surface owner.

"Of course in endeavoring to find the intent of the parties we must consider the situation and circumstances existing when the deeds were made." 429 S.W.2d at 397.

---

3. In fact, the *Croley* case is largely ignored in *Martin*. It is cited as one of the cases following *Buchanan,* and at the end of the *Martin* decision when the court compares the *Buchanan* result with a case reaching a different result with respect to oil rights, *Croley* is referred to only for its statement that the waiver-of-damage clause in a broad form deed was not a controlling factor in the *Buchanan* decision. Perhaps the court considered *Croley* distinguishable because the deed there was executed in 1948

when, as the court recognized, strip mining was fairly common and the deed reserved all coal on or under the land and reserved the right to remove all minerals on or under the land. This seems reasonable in view of the fact of *Martin's* statement that the intent of the parties to a deed must be determined by considering the situation and circumstances existing when the deed was made. In any event, *Croley's* reliance on the word "all" for its result appears outside the analytical framework of *Martin*.

The court then considered some of the circumstances attending the execution of the "broad form" deed involved. It was noted that in 1900 only 17 per cent of the land in Knott County, where the subject property was located, was improved agricultural land. Much of the *Martin* tract was hillside land and of no productive value. The court weighed these facts against the argument that no farmer would intend that his *fields* be destroyed by mining operations. Also considered was the fact that in 1900 the average value per acre of land in Knott County was $2.90 while in 1905 only the minerals rights to the *Martin* tract were purchased for $3.00 per acre. The court apparently considered the evidence that the full value of the land had been paid to the grantor in evaluating the possibility that the original grantor in fact intended to convey the complete use of the surface and to retain bare title for whatever value it may have. Another circumstance mentioned was the fact that even in 1905 there were potential sources of damage to the land from customary deep mining methods. A final consideration examined by the court was that under a "broad form" deed the surface owner reserved use of the land for agricultural purposes only to the extent that such use was consistent with the rights of the mineral owner. The court considered this factor as evidence that agricultural values were subordinated to mineral values. After considering the particular circumstances surrounding the execution of the *Martin* deed and the particular language of that deed the

court held that "the mineral owner bought and paid for the right to destroy the surface in a good faith exercise of the right to remove the minerals." 429 S.W.2d at 399.

The *Martin* case of course involved a "broad form" deed apparently similar to that in *Buchanan*. The cases interpreting deeds as allowing strip mining have, with the possible exception of *Croley*, dealt with typical "broad form" deeds. A common denominator among these deeds is that each gave the mineral owner rights to the surface of the land such as the right to use the surface in any manner deemed necessary or convenient (*Buchanan*) or the right to remove any and all minerals on or under the land (*Croley*). While not dispositive of the question, such language is evidence that the original parties to the deed intended that the mineral owner's right to use the surface in removal of minerals would be superior to any competing right of the surface owner.

Appellant Pasco contends that only typical "broad form" deeds may be interpreted as allowing strip mining. The Kentucky Court of Appeals has not explicitly said that only "broad form" deeds allow stripping, nor has it said that non-"broad form" deeds allow stripping.[4] In this situation we feel compelled to follow the *Martin* approach and consider the question whether the parties to the deed intended that the mineral owner's rights to use the surface in removal of the minerals would be superior to any competing right of the surface owner.

4. In Davidson v. Grigsby, 451 S.W.2d 632 (1970), the court encountered a deed conveying all coal and minerals "with customary mining privileges." Before attempting to strip mine the surface of the subject land, the mineral owner made a separate agreement with the surface owner for payment for the right to strip. A dispute over the agreement arose and the surface owner sued the mineral owner. The Court of Appeals stated:

"Citing Croley v. Round Mountain Coal Company, Ky., 374 S.W.2d 852, and Buchanan v. Watson, Ky., 290 S.W. 2d 40, and others dealing with the so-

called 'Mayo' form of mineral deed, the appellants maintain that they had the right to extract the coal under appellee's surface by the auger or strip methods, so there was no basis for allowing recovery absent a showing that their operations were done arbitrarily, wantonly, or maliciously. Appellee counters that the language of the mineral grant to appellants' predecessor was different from the 'Mayo' language, so that the rationale of the cited cases is inapplicable. We do not reach that question." 451 S.W.2d at 633.

We turn now to an examination of the particular deeds involved in the present controversy. The 1919 deed conveying the coal and minerals underlying tract #1 is clearly not a typical "broad form" deed and thus would not, as a matter of law, receive the interpretation given to the *Buchanan* and *Martin* deeds. This instrument conveys "all of the coal and minerals, excluding the oil and gas, *underlying* a certain tract" and conveys "all the rights and privileges necessary to go *in and under* said tract." These references to underground mining plus the fact that the mineral owner is given no rights to use the surface for mining purposes indicate that the mineral grantee had not "bought and paid for the right to destroy the surface." *Martin, supra,* 429 S.W.2d at 399. The particular rights given the mineral grantee, ("all the rights and privileges necessary to go in and under said tract of land and mine and remove therefrom said coal,") appear to be no more than would be implied in any conveyance of minerals. And since, as we have noted, the Kentucky courts have refused to say that *any* deed of mineral rights *automatically* carries the right to strip, we can only conclude that the 1919 deed demonstrates no intention that the mineral owner's right to use the surface is superior to any competing right of the surface owner.

The 1914 deed conveying the coal from tracts #2 and #3 differs substantially from the 1919 instrument. This deed grants extensive rights, both under and on the land and specifically allows the surface to be used for mining purposes. Among other rights, the grantee is given the right to mine "without liability for any damage that may arise to the surface," the right "to discharge water and other substances from the mine . . . upon the said surface without liability," "the right to bore and drill upon said land for prospecting purposes . . . or for any other purposes," and all rights and privileges "in and about said land on the surface or underneath the surface thereof inci-dent to and required by the successful and profitable mining."

While this deed is not precisely similar to the typical "broad form" deed found in *Buchanan,* we think it expresses with sufficient clarity that the parties intended that the mineral owner's rights would be superior to any competing rights of the surface owner. This deed would, therefore, come within the ambit of both *Buchanan* and *Martin.*

Accordingly the action must be remanded to the district court for entry of judgment vacating its former judgment and with directions to enter a judgment denying Peabody's motion for summary judgment and granting Pasco's similar motion as to tract #1. The judgment will sustain Peabody's motion as to tracts #2 and #3 and deny Pasco's similar motion as to those tracts.

Modified and remanded.