**UNITED STATES of America, Plaintiff-Appellee,**

v.

**STEARNS COAL AND LUMBER COM-PANY, Defendant-Appellant.**

**No. 86–5560.**

United States Court of Appeals, Sixth Circuit.

Argued March 13, 1987.

Decided April 21, 1987.

Rehearing Denied June 2, 1987.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Jane E. Graham (argued), for plaintiff-appellee.

Winfrey P. Blackburn, Jr., Bruce F. Clark (argued), Stites and Harbison, Frankfort, Ky., for defendant-appellant.

Before ENGEL, KRUPANSKY and GUY, Circuit Judges.

ENGEL, Circuit Judge.

The issue for decision is whether under Kentucky law Stearns Coal and Lumber Company, under a reservation of mineral rights in a deed of surface land to the United States, may engage in strip mining when the deed reserving its mineral rights is silent on the subject. The district court held that Stearns could not strip mine without first securing permission of the surface owner, the United States. We affirm.

In 1937, Stearns conveyed by deed to the United States the surface rights in 46,842.4 acres in Wayne and McCreary Counties, Kentucky, reserving certain mineral rights. The purchase price was $135,500.84, or $2.85 per acre. The government purchased the land for inclusion in a national forest under the Weeks Act of 1911, 36 Stat. 961, ch. 186, as amended by the Clarke-McNary Act of 1924, 43 Stat. 653, ch. 348. Stearns had not conducted strip mining on this property at that time, nor did it seek to do so until 1954, when it applied to the Secretary of Agriculture under its mineral rights reserved in the deed. When the Secretary denied permission, Stearns did not again seek to strip mine until 1976, when it desired to strip mine a 19–acre tract partially within the Daniel Boone National Forest. The Forest Service denied approval on the grounds that (1) Stearns did not have a legal right to strip mine under the mineral reservation contained in the deed; and (2) the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et eq.*, prohibited this activity on national forest land. After receiving a state permit to mine coal, Stearns brought this suit in May 1978 seeking, *inter alia*, declaratory relief giving it the right to strip mine coal within the national forest under its mineral reservation. Afterwards, in the same year, the United States brought suit against Stearns for declaratory relief to prevent Stearns from strip mining coal under the property despite Stearns' reservation of mineral rights.

The actions were consolidated,[1] and, by agreement of the parties, the district court limited its decision to the deed construction issue, and did not consider any federal statutory questions. Following a bench trial, the district court, in an opinion published at 595 F.Supp. 808 (E.D.Ky.1984), held that the reservation did not preserve Stearns' right to strip mine. Its decision rested upon Kentucky case law, and not on KRS 381.940, discussed *infra*. In the alternative, the court decided that the statute, if applicable, would require the same result. The court stayed entry of judgment, based on pending litigation concerning federal and state law questions. In 1986, the court

---

1. Jurisdiction was predicated upon 28 U.S.C. § 1345.

entered final judgment after determining that there was no longer any reason to continue to stay. This appeal followed.

The parties and the district court agree that the deed is unambiguous and it therefore will be construed according to its terms without reference to any extrinsic evidence of the circumstances surrounding the deed, such as other deeds the government entered into or minutes from meetings of the National Forest Reservation Commission. The parties also agree that the law of Kentucky is controlling. The portions of the deed which form the basis of our decision follow:

RESERVING, however, from the operation of this conveyance, unto the party of the first part [Stearns], its successors or assigns, the unrestricted use and control for all legal purposes until same are abandonded or surrendered by vendor, or its assigns, of approximately forty (40) acres, ... at the mouth of each of the following mines: # 1, # 4, # 11, # 15 and # 16, Cooperative, Fidelity and Grassy Fork. These reserved areas include mine openings, tipples, trucks, bridges, substation and shops.

\*   \*   \*   \*   \*   \*

There is, also, RESERVED, the right to the use of all existing or necessary rights-of-way over the land conveyed herein for the removal of timber hereinafter reserved, and the right to use existing rights-of-way, and other rights-of-way as approved by the Forest Officer, over the land herein conveyed for the removal of any timber now or hereafter owned by the Stearns Coal and Lumber Company.

\*   \*   \*   \*   \*   \*

There is, also, RESERVED, all metaliferous minerals, coal, oil, gas and limestone in, upon and under the described tracts of land; PROVIDED, however, that all operations from mining and removing same same (sic) shall be done and carried on in accordance with the following rules and regulations prescribed by the Secretary of Agriculture, viz:

\*   \*   \*   \*   \*   \*

(2) In prospecting for, and in mining and removing minerals, oil, or gas, and in manufacturing the products, thereof, only so much of the surface shall be occupied, used or disturbed as in (sic) reasonable and, according to recognized good practice, necessary for the purpose.

(3) In underground operations all reasonable and usual provisions shall be made for the support of the surface, and to that end the tunnels, shafts, and other workings shall at all reasonable times be open to inspection and examination by the forest officers and mining experts or inspectors of the United States.

\*   \*   \*   \*   \*   \*

(5) The method commonly known as "Hydraulic Mining" is positively prohibited.

(6) Payment at the usual rates charged in the locality for sales of National Forest timber, and timber products of the same kind or species, shall be made to the United States for all timber, undergrowth or young growth, cut, destroyed, or damaged in prospecting, mining, drilling, or removing minerals, oil, or gas, or in manufacturing products therefrom, and in the location and construction of buildings or works of any kind for use in construction therewith.... No timber, undergrowth, or reproduction shall be unnecessarily cut, destroyed, or damaged.

The deed also provides that buildings and other structures and improvements may be built upon the land if a forest officer approves their locations. They must be removed after completion of the mining.

The language of this deed varies from many "broad form deeds" entered into in Kentucky during the early part of this century. In those deeds, under which the mineral owner could mine virtually without limitation, the surface estate has been held subservient to the dominant estate of the mineral holder. *Buchanan v. Watson*, 290 S.W.2d 40 (Ky.1956). In *Buchanan*, the Kentucky Court of Appeals held that since the mining company had the right to remove "all the coal" "in ... on, and under" the land, the deed did not preclude the

company from engaging in the only feasible process of extracting the coal. *Buchanan* remains good law as to the interpretation of broad form deeds. *Martin v. Kentucky Oak Mining Co.,* 429 S.W.2d 395, 399 (Ky.1968).

■ However, while Kentucky courts have sometimes permitted strip mining under deeds that grant overwhelming mining rights but are narrower than broad form deeds, they have not construed *Buchanan* as controlling for deeds such as the one in question. For a time, the determinative question for deeds similar to the present one was whether the parties contemplated that strip mining would be permitted according to the particular language of the deed. For example, in *Croley v. Round Mountain Coal Co.,* 374 S.W.2d 852 (Ky. 1964), the court allowed the mineral estate owner to strip mine based on a deed containing certain clauses virtually identical to ones present in this deed. The *Croley* deed reserved all coal, oil, gas, stone, and water, "in, on, or under" the land. The court held that since *all* coal could not be removed through underground mining, and since the removal of stone normally would require substantial surface destruction, the parties must have intended that the minerals could be removed by any recognized method. *Id.* at 853. As in *Buchanan,* the purpose of the conveyance was to allow the mineral estate owner to remove coal from below the surface, and denying that right by foreclosing the only feasible removal process would defeat the purpose of the deed. *Id.* Stearns relies heavily upon *Croley,* and were it the final word on the subject, we would agree that Stearns' reservation of mineral rights would permit it to strip mine these acres without the necessity of securing the approval of the United States. However, we believe that the law of Kentucky on this subject has changed substantially since *Croley.*

That change is reflected in the case that we consider dispositive, *Peabody Coal Co. v. Pasco,* 452 F.2d 1126 (6th Cir.1971). In that case, this court had to determine whether strip mining was permissible under two different deeds. The court noted that since *Croley,* the Kentucky Court of Appeals had decided *Martin v. Kentucky Oak Mining Co.,* 429 S.W.2d 395 (1968), which shifted the analysis from whether the parties contemplated strip mining to whether the "parties to the deed intended that the mineral owner's right to use the surface in removal of minerals would be superior to *any* competing right of the surface owner." 452 F.2d at 1132 (emphasis added). This court found that *Martin* did not rely either on the deed's "all coal" language, or "in, on and under" phrasing, contrary to *Croley.* This court's holding in the companion case, *Peabody Coal Co. v. Erwin,* 453 F.2d 398, 399 (6th Cir.1971) (per curiam), which reversed the district court because it "placed undue emphasis on *Croley* ...," indicates a clear rejection of the same talismanic argument advanced by Stearns in this case. The subsequent decision in *Commerce Union Bank v. Kinkade,* 540 S.W.2d 861, 864 (Ky.1976) (per curiam), confirms our belief that this court in *Pasco* and *Erwin* properly recognized a change in Kentucky law.

"Realizing the potential fact that no two grants of mining rights may be identical, it is necessary that a proper construction of such rights be confined to a deed-to-deed interpretation of clauses in a mineral deed which grant or modify mining rights." *Id.* at 863–64. We believe that the clauses in this deed do not indicate that the parties "intended that the mineral owner's rights to use the surface in removal of the minerals would be superior to any competing right of the surface owner." *Martin,* 429 S.W.2d at 397; *Pasco,* 452 F.2d at 1132. The second regulation contained in the deed demands that the mineral owner only disturb so much of the surface as is reasonable. The third regulation requires that in underground mining operations, Stearns make all reasonable and usual provisions for surface support, and open its tunnels for inspection and examination by forest officers or government inspectors. Finally, the fifth regulation prohibits the employment of hydraulic mining, and the sixth places limitations on the destruction of timber.

We disagree that permitting the company to disturb so much of the surface as is reasonable mandates subordination of the surface estate to the mineral estate. Under the provisions of this deed, strip mining would not be a reasonable use of the surface because the surface restrictions imposed upon Stearns indicate that the parties did not contemplate that Stearns could totally destroy the surface. Since some rights were preserved in the surface owner, it follows *a fortiori* that Stearns as owner of the mineral estate did not retain rights superior to any conveyed to the United States as surface owner.

Furthermore, although the third regulation refers only to underground mining, the surface owner's rights to support and inspection would be meaningless if Stearns could destroy the surface. The fifth and sixth regulations prohibiting hydraulic mining and limiting timber destruction also reflect the parties' intent that the surface not be destroyed. As in *Erwin*, the deed in the instant case "grants rights impliedly incident to underground mining, but ... does not indicate the intention of the parties that the mineral owner bought the right to destroy the surface, or that it was intended that the mineral owner's rights to use the surface would be superior to any competing right of the surface owner." *Erwin*, 453 F.2d at 399; *Commerce Union Bank*, 540 S.W.2d at 864. Accordingly, Stearns may not, as the owner of the subservient estate, commence strip mining operations without the permission of the owner of the dominant estate, the United States.

We are aware that Kentucky has enacted a statute, KRS 381.940, which, if constitutional, bears upon the question before us. That statute provides:

In any instrument heretofore or hereafter executed purporting to sever the surface and mineral estates or to grant a mineral estate or to grant a right to extract minerals, which fails to state or describe in express and specific terms the method of coal extraction to be employed, or where said instrument contains language subordinating the surface estate to the mineral estate, it shall be held, in the absence of clear and convincing evidence to the contrary, that the intention of the parties to the instrument was that the coal be extracted only by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed, and that the mineral estate be dominant to the surface estate only for the purposes of coal extraction by the method or methods of commercial coal extraction commonly known to be in use in Kentucky in the area affected at the time the instrument was executed.

The constitutionality of this statute has been argued before the Kentucky Supreme Court in *Akers v. Baldwin*, Docket No. 85-SC-392-CL, but at this time remains undecided. The statute's constitutionality was challenged on the grounds of due process, equal protection, and the contract clause. The Kentucky Court of Appeals had declared a precursor to KRS 381.940 unconstitutional in *Department for Natural Resources and Environmental Protection v. No. 8 Limited of Virginia*, 528 S.W.2d 684 (Ky.1975).

■ If KRS 381.940 is unconstitutional, we adhere to our holding affirming the district court based upon the common law of Kentucky. Judge Siler, however, also recognized that the statute might be applicable and constitutional, and wisely took evidence on the question whether strip mining was commonly known to be used in this area in 1937, when the deed was signed. He found that Stearns sold the surface rights to this land after incurring losses in its timber and underground coal mining operations during the depression. At the time of the conveyance, Stearns' timbering potential on this land had been virtually exhausted, and the company was ceasing its mining operations at several sites. Although strip mining had been conducted in McCreary County many years before this conveyance, no surface mining operations were active in 1937. In fact, the strip mining methods that had earlier been used in McCreary County were not technologically feasible for use on this land because

of its steep slopes and overburden. We accept as not clearly erroneous these factual findings, and hold that in the event KRS 381.940 is constitutional, the judgment of the district court may be affirmed on its alternative statutory ground that strip mining was not known to be commonly in use in this area of Kentucky when the deed was executed.